# EXHIBIT A

## COMPLAINT

ELECTRONICALLY FILED
2020 Oct 29 AM 9:07
Anthony P. Vivo, CLERK OF COURT - MAHONING

IN THE COURT OF COMMON PLEAS
MAHONING COUNTY, OHIO

| | |
|---|---|
| AARON LATTNER<br>1567 Greensleaves Circle<br>Hubbard, Ohio 44425<br><br>Plaintiff, | CASE NO. 20 CV 1755<br><br>JUDGE: Sweeney |
| v. | **COMPLAINT FOR DAMAGES AND REINSTATEMENT**<br><br>**(Jury demand endorsed herein)** |
| CORECIVIC OF TENNESSEE, LLC<br>2240 Youngstown-Hubbard Road<br>Youngstown, Ohio 44505<br><br>-and-<br><br>CORECIVIC OF TENNESSEE, LLC<br>c/o CT Corporation System<br>4400 Easton Commons Way, Suite 125<br>Columbus, Ohio 43219<br><br>Defendant. | |

Plaintiff, Aaron Lattner, by and through undersigned counsel, as his Complaint against Defendant, states and avers the following:

## PARTIES & VENUE

1. Lattner is a resident of the city of Hubbard, Trumbull County, state of Ohio.

2. Defendant CoreCivic of Tennessee, LLC. ("CoreCivic") is a Tennessee company with its principal place of business located in Mahoning County, Ohio.

3. CoreCivic maintains a business at 2240 Youngstown-Hubbard Road, Youngstown, Ohio in Mahoning County.

4. CoreCivic is an "employer" within the meaning of O.R.C. § 4113.51(B).

5. CoreCivic is an "employer" within the meaning of O.R.C. § 4112.

6. All material events alleged in this Complaint occurred in Mahoning County.

7. Personal jurisdiction is proper over CoreCivic pursuant to Ohio R.C § 2307.382 (A)(1) &(4).



8. Venue is proper pursuant to Civ. R. 3(C)(3) & (6).

9. This Court is a court of general jurisdiction over the claims presented herein, including all subject matters of this Complaint.

**FACTS**

10. Lattner is a former employee of CoreCivic.

11. Lattner is a white male.

12. On or about November 2017, Lattner began working for CoreCivic as a Corrections Officer.

13. At all times relevant herein, Lattner worked for CoreCivic at the Northeast Ohio Correctional Center ("NEOCC") in Youngstown, Ohio.

14. NEOCC is managed and operated by CoreCivic under regulation by the Ohio Department of Rehabilitation and Correction.

15. On or about April 2020, Lattner was involved in an investigation regarding inmate abuse.

16. The investigation required a local Law Enforcement Officer ("LEO") to interview an inmate.

17. In or about April 2020, the LEO arrived at NEOCC with his service weapon holstered on his waist.

18. R.C. § 2921.36 prohibits anyone from conveying weapons onto the grounds of a corrections facility.

19. Pursuant to R.C. § 2921.36, a violation of the statute involving a deadly weapon is a felony.

20. CoreCivic has rules and policies prohibiting deadly weapons from entering NEOCC.

21. CoreCivic has procedures to screen visitors for deadly weapons and other prohibited items prior to entering NEOCC.

22. Visitors to NEOCC must first pass through two outer secured doors ("Control") and then through a metal detector and x-ray checkpoint before being admitted to NEOCC.



23. In or about April 2020, the LEO who visited NEOCC to interview an inmate was permitted to pass through three (3) different checkpoints with a deadly weapon. ("LEO Incident")

24. The LEO passed through the two (2) secured gates at Control without being asked to remove his service weapon.

25. The LEO passed through the metal detector and x-ray checkpoint without being asked to remove his service weapon.

26. In or about April 2020, Lattner saw the LEO inside NEOCC passed all three checkpoints with his service weapon.

27. Lattner intercepted the LEO in visitation and informed the LEO that he could not be inside NEOCC with a weapon.

28. Lattner informed Front Entry Officer Skelton that the LEO should not have been able to pass through Control and the metal detector and x-ray checkpoint with a weapon.

29. Lattner told Front Entry Officer Skelton to escort the LEO out of NEOCC so that the LEO could secure the weapon in the LEO's vehicle.

30. Lattner did not escort the LEO out of NEOCC because Lattner could not leave the inmate to be interviewed by the LEO alone in visitation.

31. Lattner did not escort the LEO out of NEOCC because Officer Skelton was not permitted contact with inmates.

32. In or about April 2020, Lattner orally reported LEO Incident to Assistant Warden Sullivan. ("Oral Report")

33. In or about April 2020, Lattner filed an incident report regarding the LEO Incident to Chief of Security James Codner. ("Written Report")



34. Lattner gathered witness statements to the incident to document that the LEO was never asked to remove his weapon in Control and the LEO was never asked to remove his weapon at the metal detector.

35. Lattner reasonably believed that the LEO incident violated CoreCivic's policies and procedures.

36. Lattner reasonably believed that LEO incident violated Ohio law.

37. On or about April 2020, Officer Anderson and Officer Irazarry were working the Control checkpoints at NEOCC.

38. Upon information and belief, Officer Anderson is an African American female.

39. Upon information and belief, Officer Irazarry is an African American female.

40. Officer Anderson admitted that she did not check for or ask the LEO for his weapon in Control in violation of CoreCivic policy and Ohio law.

41. Officer Anderson's job duties in Control included checking visitors for weapons and preventing weapons from entering NEOCC.

42. Officer Irazarry admitted that she did not check for or ask the LEO for his weapon in Control in violation of CoreCivic policy and Ohio law.

43. Officer Irazarry's job duties in Control included checking visitors for weapons and preventing weapons from entering NEOCC.

44. Officer Skelton admitted that he did not check for or ask the LEO for his weapon at the metal detector and x-ray checkpoint in violation of CoreCivic policy and Ohio law.

45. Officer Skelton's job duties in Control included checking visitors for weapons and preventing weapons from entering NEOCC.

46. CoreCivic has a policy to investigate reports of dangerous or unlawful conduct.



47. Upon information and belief, CoreCivic's investigation found that Officer Anderson was not at fault for the LEO Incident.

48. CoreCivic did not discipline or terminate the employment of Officer Anderson for her misconduct in the LEO Incident.

49. Upon information and belief, CoreCivic's investigation found that Officer Irazarry was not at fault for the LEO Incident.

50. CoreCivic did not discipline or terminate the employment of Officer Irazarry for her misconduct in the LEO Incident.

51. Upon information and belief, CoreCivic's investigation found that Officer Skelton was at fault for the LEO Incident.

52. CoreCivic did discipline and terminate Officer Skelton, who is a white male.

53. Upon information and belief, CoreCivic's investigation found that Lattner was at fault for the LEO Incident.

54. CoreCivic did not have a legitimate reason to determine Lattner was at fault for the LEO Incident.

55. Lattner did not violate any CoreCivic rule, policy, procedure, or law during the LEO Incident.

56. Lattner believed that the LEO Incident was a violation of CoreCivic policies and procedures.

57. Lattner believed that the LEO Incident was a violation of state law.

58. Lattner reported conduct that he reasonably believed was a violation of CoreCivic's policies, procedures, and Ohio law.

59. On or about May 15, 2020, Assistant Warden Misty Mackey told Lattner that he should resign, or he would be fired for the LEO Incident. ("Forced Resignation")

60. Assistant Warden Mackey told Lattner that his termination was due to his failure to personally walk the LEO out of NEOCC after the LEO Incident.



61. Lattner explained to Mackey that he could not leave the inmate unattended because that was a violation of his job duties.

62. Lattner explained to Mackey that he could not leave the inmate with Front Entry Officer Skelton because that was a violation of his job duties.

63. Lattner explained to Mackey that the LEO had already passed through three checkpoints before Lattner became involved in the LEO Incident.

64. Lattner contacted Assistant Warden Joseph Hurst to discuss the Forced Resignation.

65. Assistant Warden Hurst told Lattner that a resignation would look better to future employers, but a termination would ensure that Lattner never worked in corrections again.

66. Lattner felt pressure to resign from CoreCivic so that he could continue working in corrections.

67. A reasonable person would feel pressure to resign rather than be fired to preserve future job opportunities.

68. Lattner resigned on or about May 15, 2020 based on the Forced Resignation.

69. Lattner would not have resigned his employment at CoreCivic but for the Forced Resignation.

70. CoreCivic terminated Lattner's employment on or about May 15, 2020 based on the Forced Resignation.

71. Upon information and belief, CoreCivic permitted similarly situated, non-white employees to retain their employment despite conduct similar to or more severe than Lattner's.

72. Upon information and belief, CoreCivic permitted similarly situated, female employees to retain their employment despite conduct similar to or more severe than Lattner's.

73. CoreCivic did not proffer a legitimate non-discriminatory reason for terminating Lattner's employment.

74. CoreCivic did not proffer a legitimate non-retaliatory reason for terminating Lattner's employment.



75. There was a causal connection between Lattner's race and CoreCivic's termination of Lattner.

76. There was a causal connection between Lattner's gender and CoreCivic's termination of Lattner.

77. There was a causal connection between Lattner's Written Report and CoreCivic's termination of Lattner.

78. CoreCivic terminated Lattner in retaliation for the Written Report.

79. Prior to his termination, Lattner had no meaningful history of performance problems.

80. Prior to his termination, Lattner had not received any negative performance reviews.

81. Prior to his termination, Lattner had received no written discipline.

82. Prior to his termination, Lattner had received no verbal discipline.

83. CoreCivic knowingly skipped progressive disciplinary steps in terminating Lattner.

84. CoreCivic knowingly terminated Lattner's employment.

85. CoreCivic knowingly took an adverse employment action against Lattner.

86. CoreCivic knowingly took an adverse action against Lattner.

87. CoreCivic intentionally skipped progressive disciplinary steps in terminating Lattner.

88. CoreCivic intentionally terminated Lattner's employment.

89. CoreCivic intentionally took an adverse employment action against Lattner.

90. CoreCivic intentionally took an adverse action against Lattner.

91. CoreCivic knew that skipping progressive disciplinary steps in terminating Lattner would cause Lattner harm, including economic harm.

92. CoreCivic knew that terminating Lattner would cause Lattner harm, including economic harm.

93. CoreCivic willfully skipped progressive disciplinary steps in terminating Lattner.

94. CoreCivic willfully terminated Lattner's employment.

95. CoreCivic willfully took an adverse employment action against Lattner.



96. CoreCivic willfully took an adverse action against Lattner.

97. As a result of CoreCivic's actions, Lattner suffered and will continue to suffer monetary and emotional damages.

**COUNT I: RETALIATION IN VIOLATION OF OHIO WHISTLEBLOWER STATUTE R.C. § 4113.52**

98. Lattner restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

99. During his employment, Lattner made verbal reports to CoreCivic about violations of Ohio law.

100. Lattner reported conduct that violated R.C. § 2921.36.

101. Lattner reasonably believed that the conduct he reported was a crime that was likely to cause an imminent risk of physical harm.

102. Lattner reasonably believed that the conduct he reported was a crime that was likely an imminent hazard to public safety.

103. Lattner reasonably believed that the conduct he reported was a felony.

104. Lattner made both oral and written complaints to CoreCivic about conduct that was likely to cause an imminent risk of physical harm.

105. Lattner made both oral and written complaints to CoreCivic about conduct that was likely to cause an imminent risk to public safety.

106. Lattner made both oral and written complaints to CoreCivic about conduct that was a felony.

107. Lattner made a reasonable and good faith effort to determine the accuracy of his complaints and/or concerns before making the oral complaints.

108. Lattner made a reasonable and good faith effort to determine the accuracy of his complaints and/or concerns before making the written complaints.



109. Lattner allowed CoreCivic sufficient time to correct or make a good faith effort to correct the felonious conduct that was likely to cause an imminent risk of physical harm and public safety.

110. CoreCivic failed to correct or to make a good faith effort to correct the felonious conduct that was likely to cause an imminent risk of physical harm and public safety.

111. CoreCivic retaliated against Lattner by terminating his employment based on his complaints regarding conduct that was illegal and/or created an imminent hazard to public safety.

112. CoreCivic termination of Lattner was in violation of R.C. § 4113.52, *et seq*.

113. As a direct and proximate cause of CoreCivic's conduct, Lattner suffered and will continue to suffer damages.

**COUNT II: WRONGFUL TERMINATION IN VIOLATION OF PUBLIC POLICY**

114. Lattner restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

115. A clear public policy exists and is manifested in Ohio statutes, and/or administrative regulations, or in the common law to prohibit the conveyance of weapons or other prohibited items onto grounds of a detention facility or institution.

116. Lattner, in good faith, reported violations of law and rules regulating the conveyance of a deadly weapon onto grounds of a detention facility or institution.

117. CoreCivic's termination of Lattner jeopardizes these public policies.

118. CoreCivic's termination of Lattner was motivated by conduct related to these public policies.

119. CoreCivic had no legitimate business justification for terminating Lattner.

120. As a direct and proximate cause of CoreCivic's wrongful conduct, Lattner suffered and will continue to suffer damages.



**COUNT III: RACE DISCRIMINATION**

121. Lattner restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

122. Throughout his employment, Lattner was fully competent to perform his essential job duties.

123. CoreCivic treated Lattner differently than other similarly situated employees based on his race.

124. CoreCivic violated R.C. § 4112.02(A) *et seq.*by discriminating against Lattner due to his race.

125. On or about May 15, 2020, CoreCivic terminated Lattner without just cause.

126. At all times material herein, similarly situated non-white employees were not terminated without just cause.

127. CoreCivic terminated Lattner based on his race.

128. CoreCivic violated R.C. § 4112.01 *et. seq.* when they terminated Lattner based on his race.

129. Lattner suffered emotional distress as a result of CoreCivic's conduct and is entitled to emotional distress damages pursuant to R.C. § 4112.01 *et. seq.*

130. As a direct and proximate result of CoreCivic's conduct, Lattner has suffered and will continue to suffer damages, including economic, emotional distress and physical sickness damages

**COUNT IV: GENDER DISCRIMINATION**

131. Lattner restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

132. Lattner is a member of a statutorily protected class based on his gender under R.C. § 4112.02.

133. CoreCivic treated Lattner differently than other similarly situated employees based on his gender.

134. CoreCivic terminated Lattner's employment without just cause.

135. CoreCivic terminated Lattner's employment based on his gender.

136. CoreCivic's discrimination against Lattner based on his gender violates R.C. § 4112.01 *et seq.*



137. Lattner suffered emotional distress as a result of CoreCivic's conduct, and is entitled to emotional distress damages pursuant to R.C. § 4112.01 *et seq*.

138. As a direct and proximate result of CoreCivic's conduct, Lattner suffered and will continue to suffer damages, including economic, emotional distress and physical sickness damages.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Aaron Lattner requests judgment against Defendant and for an Order:

(a) Requiring CoreCivic to retroactively restore Lattner to one of the positions to which he was entitled by virtue of his application and qualifications, and expunge his personnel file of all negative documentation;

(b) Award against CoreCivic for compensatory and monetary damages to compensate Lattner for his back wages, front wages, lost benefits and other consequential damages in an amount in excess of $25,000 per claim to be proven at trial;

(c) Award against CoreCivic for punitive damages in an amount in excess of $25,000 per claim to be proven at trial;

(d) Award of reasonable attorneys' fees and non-taxable costs for Lattner's claims as allowable under law;

(e) Awarding the taxable costs of this action; and



(f) Awarding such other and further relief that this Court deems necessary and proper.

Respectfully submitted,

/s/ Barry R. Murner

Barry R. Murner (0069195)
**THE SPITZ LAW FIRM, LLC**
25200 Chagrin Boulevard, Suite 200
Beachwood, OH 44122
Phone: (216) 291-4744
Fax: (216) 291-5744
Email: Barry.Murner@spitzlawfirm.com

*Attorney For Plaintiff Aaron Lattner*

**JURY DEMAND**

Plaintiff Aaron Lattner demands a trial by jury by the maximum number of jurors permitted.

/s/ Barry R. Murner

Barry R. Murner (0069195)
**THE SPITZ LAW FIRM, LLC**



Print

ELECTRONICALLY FILED
2020 Oct 29 AM 9:07
ANTHONY VIVO, CLERK OF COURT - MAHONING

# Common Pleas Court of Mahoning County, Ohio Clerk of Courts

# INSTRUCTIONS FOR SERVICE

Aaron Lattner
PLAINTIFF(S)

Vs.

CASE NO.

CoreCivic of Tennessee, LLC
DEFENDANT(S)

**TO THE CLERK OF COURTS, YOU ARE INSTRUCTED TO MAKE:**

CERTIFIED MAIL SERVICE ✓ ORDINARY MAIL SERVICE___

PERSONAL SERVICE BY THE SHERIFF OF ____________ COUNTY ___

RESIDENCE SERVICE BY THE SHERIFF OF ____________ COUNTY ___

PERSONAL SERVICE BY PROCESS SERVER___

RESIDENCE SERVICE BY PROCESS SERVER___

**OF THE FOLLOWING DOCUMENTS:** Complaint for Damages and Reinstatement

**UPON:**

| | |
|---|---|
| CoreCivic of Tennessee, LLC (NAME #1) | CoreCivic of Tennessee, LLC (NAME #2) |
| 2240 Youngstown-Hubbard Road (ADDRESS) | c/o CT Corporation System (ADDRESS) |
| | 4400 Easton Commons Way, Suite 125 |
| Youngstown, Ohio 44505 (CITY—STATE—ZIP CODE) | Columbus, Ohio 43219 (CITY—STATE—ZIP CODE) |
| (NAME #3) | (NAME #4) |
| (ADDRESS) | (ADDRESS) |
| (CITY—STATE—ZIP CODE) | (CITY—STATE—ZIP CODE) |

Barry R. Murner 0069195
**Attorney Name and Supreme Court I.D. No.**

25200 Chagrin Blvd., Ste 200, Beachwood, Ohio 44122
**Address, City, State, Zip Code**

216-291-4744
**Phone Number**

2020 CV 01755

Reset